DISCIPLINARY COUNSEL *v.* QUATMAN.

[Cite as *Disciplinary Counsel v. Quatman,*
108 Ohio St.3d 389, 2006-Ohio-1196.]

(No. 2005–1531—Submitted December 14, 2005—Decided March 29, 2006.)

**Per Curiam.**

{¶ 1} Respondent, George Bernard Quatman of Lima, Ohio, Attorney Registration No. 0008117, was admitted to the Ohio bar in 1972.

{¶ 2} On August 9, 2004, relator, Disciplinary Counsel, filed a complaint charging respondent with professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in May 2005. With one member dissenting, the panel then prepared written findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

### Misconduct

{¶ 3} According to the testimony of Deanna Entinghe, she met respondent in 1999 when she sought his legal advice about a personal-injury matter. She was satisfied with his advice and did not meet with him again about that issue.

{¶ 4} In 2003, Entinghe made another appointment with respondent to discuss a domestic-relations matter. She went to respondent's law office in Lima at the

appointed time on the morning of July 2, 2003, but discovered when she arrived that the lights were out in the office due to an electrical problem. Respondent, his secretary, and Entinghe bantered for a few minutes about the power outage, and then he asked the secretary to run an errand.

{¶ 5} Respondent and Entinghe agreed to discuss her legal problem in the law firm's reception area, which was well lit by natural light, rather than meeting in respondent's office, which respondent said was dark. The two of them sat on a couch in the reception area, and Entinghe began to explain that she was seeking a divorce. She described her husband's drinking problem, and she told respondent that her own health problems had prompted her husband to abuse alcohol. Respondent asked questions about those health problems, and Entinghe explained to him that she had undergone seven or eight experimental operations in which pain pacemakers had been inserted in her body to alleviate back pain.

{¶ 6} During their conversation, Entinghe used her hands to point to various scars on her back from surgical incisions. Then, according to Entinghe, respondent touched the portion of her shirt that was covering her pacemakers. She was shocked and started backing away because she noticed a strange look on respondent's face that made her uncomfortable. Respondent then put his hands on her breasts for a few seconds and said, "You have very nice breasts."

{¶ 7} Entinghe stepped back, feeling sick and disgusted. She headed for the door and recalls that respondent said, "I'll see you next Tuesday" as she was leaving. Entinghe ran out the door, entered her car, and drove away at high speed. Once home, she telephoned her mother and told her what had just happened. She also told her sister. The following day, she hired another attorney to represent her in her legal separation.

{¶ 8} In September 2003, Entinghe told both her attorney and her husband about the incident that had occurred in respondent's office two months earlier. Her attorney and her husband's attorney urged her to file a grievance against respondent, and she did so in November 2003.

{¶ 9} After the grievance was filed, relator sent a letter of inquiry to respondent, and he provided his reply in a letter dated January 6, 2004. In that letter, respondent stated, "Although I barely remember the incident with Mrs. Entinghe, my secretary and I recall that she came in for a short appointment, free consultation, to my office some months ago. She appeared to be very agitated and upset and upon attempting to calm her down, she advised me that she was disabled because of some sort of medical implants which to my shock and surprise she displayed to me."

{¶ 10} Attorney Geoffrey Stern then sent a letter dated January 9, 2004, to relator on respondent's behalf. In that letter, attorney Stern stated that Entinghe had displayed her medical implants to respondent. According to the

letter, respondent "did not ask her to make such a display, nor did he touch her in any manner, including but not limited to her false allegations that he put both hands 'on [her] pacemaker in [her] tummy' and 'took ahold of both [her] breasts.' "

{¶ 11} On June 7, 2004, Stern sent relator a letter prepared by Michael D. Schafer, a clinical psychologist, who began treating respondent after he was hospitalized in February 2004 for acute intoxication and seizures. According to Schafer's letter, respondent had described to him a long history of alcohol use, including what Schafer cited as the "classic symptoms of alcohol addiction." Schafer also stated that respondent had reported experiencing periods of memory impairment known as "blackouts."

{¶ 12} In a follow-up letter dated July 27, 2004, Dr. Schafer stated that he was providing outpatient therapy to respondent for an alcohol problem, and he explained that respondent had told him that the alleged incident involving Entinghe had occurred at a time when respondent was "actively drinking, including drinking at work, during working hours." The letter added that respondent recalled drinking on the day of the incident, but had only a "sketchy" memory of his meeting with Entinghe. Schafer confirmed this account at his deposition in May 2005.

{¶ 13} Respondent disputed this account, however, when he testified at his disciplinary hearing in May 2005. He told the panel that Dr. Schafer must have misinterpreted his remarks during therapy or made up the information in his report, because alcohol played no part in the incident with Entinghe. According to respondent, he never told Dr. Schafer that he had been actively drinking or drinking at work at the time of the incident, or that he had been drinking that day. Respondent also told the panel that he could accurately recall the events of July 2, 2003, and he said that his memory of that day had improved over time.

{¶ 14} Respondent acknowledged at his disciplinary hearing in May 2005 that he had said, "You have nice breasts" to Entinghe in his office on July 2, 2003. He characterized the remark as one designed to make her feel good. Respondent denied touching Entinghe's breasts, although he qualified that remark by saying that he could not remember whether he had "brushed" her breast, adding that he doubted he had "touched" her breast. He also testified that Entinghe had unbuttoned her blouse, grabbed his hand, and placed it on the lower part of her rib cage.

{¶ 15} This version of events was much more detailed than the explanation in respondent's January 6, 2004, letter to relator, in which he had written that he could "barely remember the incident." And attorney Stern's letter dated January 9, 2004, on respondent's behalf had advised relator that respondent had not touched Entinghe "in any manner." Moreover, when respondent met with

representatives from relator's office in May 2004, he never told them that Entinghe had grabbed his hand and had placed it on her pacemakers or her rib cage. His explanation: He did not remember that fact in May 2004, but did remember it at his May 2005 disciplinary hearing.

{¶ 16} The board found that respondent had violated DR 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law).

### Sanction

{¶ 17} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent had displayed a selfish motive by seeking personal gratification during his meeting with Entinghe, had submitted false statements and engaged in deceptive practices during the disciplinary process, and had caused harm to a vulnerable victim. BCGD Proc.Reg. 10(B)(1)(b), (f), and (h).

{¶ 18} The board also cited two mitigating factors: the absence of a prior disciplinary record and respondent's strong character evidence. BCGD Proc. Reg. 10(B)(2)(a) and (e). Letters submitted to the board on respondent's behalf described him as a professional of "high integrity and character" and as someone whose conduct has always been "appropriate in all circumstances."

{¶ 19} The panel did not view respondent's alcohol problem as a mitigating factor, concluding that he had inappropriately tried to use that problem as an excuse for his behavior. According to the panel majority, respondent's testimony showed that he is not committed to the Alcoholics Anonymous treatment program and participates in it only casually. There is no evidence in the record establishing that respondent has successfully completed an approved alcohol-treatment program, and he in fact left an inpatient treatment program before the program was finished. The record also contains no prognosis from a qualified health-care professional or counselor about the likelihood of respondent's ability to maintain a competent and professional legal practice. Absent those two elements, the requirements for mitigation under BCGD Proc.Reg. 10(B)(2)(g) have not been met in this case. In any event, respondent himself testified at his disciplinary hearing that alcohol played no part in the incident with Entinghe (although he had suggested otherwise during the early stages of relator's investigation).

{¶ 20} Relator recommended that respondent be suspended from the practice of law for six months, and the panel majority and the full board adopted that recommendation. The dissenting panel member found that the allegations against respondent had not been proven by the requisite clear and convincing

evidence. The case is now before us on respondent's objections to the board's recommendation.

{¶ 21} We have reviewed the board's report and have also considered the written and oral arguments presented by the parties in response to that report. We accept the board's factual findings and legal conclusion, although we disagree with the board's recommended sanction.

{¶ 22} Respondent disputes Entinghe's version of the facts, but the panel members—who were in the best position to evaluate the differing stories told by respondent and Entinghe—found his testimony to be "far less credible" than hers. After hearing and seeing two days of testimony, two of the three panel members found clear and convincing evidence supporting relator's allegation that respondent had inappropriately touched Entinghe's breasts, that he had made an inappropriate comment to her, and that he had misrepresented his memory about the incident while citing alcohol use as an excuse for his behavior during relator's investigation. The evidence in the record supports the panel's and the board's findings on these issues.

{¶ 23} The legal conclusion that this misconduct violated DR 1–102(A)(6) is sound. The physical contact, coupled with the inappropriate remark about Entinghe's breasts, was unethical and unprofessional. Respondent's words and actions reflected poorly on the legal profession and represented a betrayal of the trust of a vulnerable client. The panel noted that Entinghe remained under the influence of the emotional trauma nearly two years after the incident had occurred.

{¶ 24} A stayed one-year suspension coupled with a two-year probationary period is the appropriate sanction for respondent's misconduct. See *Disciplinary Counsel v. Moore*, 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423 (imposing a stayed one-year suspension and two years' probation on an attorney who had made unsolicited and inappropriate sexual comments to a client and had engaged in consensual sexual relations with another client).

{¶ 25} Respondent cited alcohol abuse as a factor in his inability to respond fully to the grievance initially, and perhaps as a factor in the misconduct itself. Yet the panel that observed his testimony discounted alcohol abuse as a cause of the incident and faulted respondent for initially relying on that abuse as an excuse for his actions and for his inability to provide a full and accurate accounting of the incident. We take seriously the panel's concerns about respondent's truthfulness surrounding his alcohol use and about the incident itself, but those concerns must be balanced against the multiple letters and testimony in the record attesting to respondent's truthfulness and good character. We conclude that a stayed suspension and a two-year probationary period will

protect the public by providing an appropriate avenue for respondent to secure the alcohol-related counseling that he appears to need.

{¶ 26} Accordingly, respondent is hereby suspended from the practice of law in Ohio for one year, with the entire suspension stayed provided that respondent commit no further misconduct during the suspension period. In addition, respondent is placed on probation for a period of two years in accordance with Gov.Bar R. V(9). While on probation, respondent must (1) continue to undergo alcohol-related counseling in a program approved by the Ohio Lawyers Assistance Program at respondent's own expense and (2) attend at least four hours of training annually, at a course or courses approved by relator, on the prevention of sexual harassment. If respondent fails to comply with either of these conditions, the stay will be lifted, and respondent will serve the entire one-year suspension. Relator must appoint one or more monitoring attorneys to track respondent's compliance with these terms of probation. Costs are taxed to respondent.

Judgment accordingly.

RESNICK, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

O'DONNELL, J., concurs in judgment only.

PFEIFER, J., dissents and would suspend respondent from the practice of law for six months.

MOYER, C.J., not participating.

———————

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.

Carlile Patchen & Murphy, L.L.P., and H. Ritchey Hollenbaugh; George B. Quatman III, for respondent.