TOLEDO BAR ASSOCIATION *v.* BURKHOLDER.

[Cite as *Toledo Bar Assn. v. Burkholder,*
109 Ohio St.3d 443, 2006-Ohio-2817.]

(No. 2005–2394—Submitted February 8, 2006—Decided June 21, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Fred Joseph Burkholder of Toledo, Ohio, Attorney Registration No. 0014094, was admitted to the Ohio bar in 1983.

{¶ 2} On April 18, 2005, relator, Toledo Bar Association, filed a complaint charging respondent with professional misconduct.   Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in September 2005.   The panel then prepared written findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

Misconduct

{¶ 3} Respondent testified at his disciplinary hearing that his law practice focused primarily on family law. On April 20, 2004, Laurel Alexander met with respondent at his office to discuss the possible termination of her marriage. At the end of their meeting, respondent told Alexander that she was beautiful and he would like to take her out on a date. Alexander told respondent that she was not interested in dating him. Alexander nonetheless did retain respondent to represent her, and respondent prepared a petition for the dissolution of Alexander's marriage and a separation agreement, as she had requested.

{¶ 4} In April, May, and June 2004, respondent and Alexander spoke by phone or left messages for each other dozens of times, and telephone records indicate that respondent called Alexander at work or on her cellular phone more than 100 times. According to Alexander's testimony at the disciplinary hearing, respondent asked her out to lunch and dinner repeatedly, but she told him she was not interested in dating. Respondent disputed that testimony, although he acknowledged that he twice tried to "console" Alexander by asking her to go out to dinner or have a drink after work "just as friends."

{¶ 5} Respondent testified that Alexander came to his home several times during the representation, and on one occasion, he asked whether she wanted to see his penis. Nothing further happened that evening, and Alexander left promptly.

{¶ 6} On another occasion, according to Alexander and her co-worker, Barb Specht, respondent touched Alexander while they were at a bar. That incident occurred while respondent was representing Alexander in May 2004. According to Specht, respondent put his arm around Alexander and pulled her close to him, and Specht twice heard Alexander ask respondent to remove his hand from her thigh. Alexander testified that respondent touched her shoulders and her leg at the bar, and she indicated that respondent's actions were inappropriate and made her feel nervous and uncomfortable.

{¶ 7} Alexander's dissolution agreement was filed on June 4, 2004. She fired respondent as her lawyer on June 28, 2004, and hired new counsel.

{¶ 8} We agree with the board's finding that respondent's actions violated the following Disciplinary Rules: DR 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law) and 5–101(A)(1) (barring an attorney from accepting employment if the exercise of professional judgment on behalf of the client may be affected by the lawyer's financial, business, property, or personal interests).

Sanction

{¶ 9} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent had acted with a selfish motive and that the victim was vulnerable. BCGD Proc.Reg. 10(B)(1)(b) and (h). Mitigating factors cited by the board included the absence of any prior disciplinary violations by respondent, his cooperative attitude during the disciplinary process, and written statements from six lawyers and one judge about respondent's good character and reputation in his community. BCGD Proc.Reg. 10(B)(2)(a), (d), and (e). The board also noted that the misconduct occurred at a time when respondent was separated from his wife and was coping with a daughter's illness.

{¶ 10} Relator recommended that respondent be suspended from the practice of law for one year with six months of the suspension stayed. The panel and the board recommended that respondent be publicly reprimanded.

{¶ 11} We conclude that a sanction more severe than a public reprimand is warranted. As the panel and the board noted in their reports, respondent was "relentless" in his pursuit of Alexander during his representation of her. His openly expressed interest in dating Alexander at the very start of the professional relationship should have prompted him to decline the representation. He had a clear duty at that point to avoid putting himself and his client in a situation in which his own personal interests could compromise his ability to provide sound advice to the client. In addition, respondent's unwelcome physical contact with Alexander at a bar, coupled with the entirely inappropriate remark about his penis at his home, was unethical and recklessly unprofessional. Respondent's words and actions reflected poorly on the legal profession, and they represented a betrayal of the trust that a vulnerable client had placed in respondent.

{¶ 12} A stayed six-month suspension is the appropriate sanction for respondent's misconduct. We have imposed stayed suspensions in other cases involving unwanted sexual advances. See *Disciplinary Counsel v. Quatman*, 108 Ohio St.3d 389, 2006-Ohio-1196, 843 N.E.2d 1205 (imposing a stayed one-year suspension and two years' probation on an attorney who had inappropriately touched a client's breasts, had made an inappropriate comment to her, and then had submitted false statements and engaged in deceptive practices during the disciplinary process); *Disciplinary Counsel v. Moore*, 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423 (imposing a stayed one-year suspension and two years' probation on an attorney who had made unsolicited and inappropriate sexual

comments to a client and had engaged in consensual sexual relations with another client).

{¶ 13} Unlike the attorney in the *Quatman* case, respondent cooperated in the disciplinary process and did not falsely blame his misconduct on alcohol abuse. And unlike the attorney in the *Moore* case, respondent confined his misconduct to one client. We conclude that a stayed suspension shorter than the stayed suspensions ordered in those cases is appropriate in this case.

{¶ 14} Accordingly, respondent is hereby suspended from the practice of law in Ohio for six months, with the entire suspension stayed provided that respondent commit no further misconduct during the suspension period. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., dissents and would publicly reprimand respondent.

---

Jonathan B. Cherry, Bar Counsel; Rankin Law Office, L.L.C., and Bonnie R. Rankin; and Gregory L. Arnold, for relator.

Arnold & Caruso, Ltd., and James D. Caruso, for respondent.