AKRON BAR ASSOCIATION *v.* MILLER.

[Cite as *Akron Bar Assn. v. Miller,* 130 Ohio St.3d 1, 2011-Ohio-4412.]

*Attorneys—Misconduct—Sexual remarks to client—Prof.Cond.R. 8.4(h)— Conduct adversely reflecting on fitness to practice law—Six-month suspension, all stayed, on conditions.*

(No. 2011-0694—Submitted June 21, 2011—Decided September 7, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-073.

_____

**Per Curiam.**

{¶ 1} Relator, Akron Bar Association, filed a complaint against E. Earl Miller, Attorney Registration No. 0077426, for violating the Rules of Professional Conduct, specifically Prof.Cond.R. 8.4(h) (forbidding conduct that adversely reflects on the lawyer's fitness to practice law). The complaint arose from a grievance filed by a client of Miller's who had recorded a telephone conversation in which the respondent made inappropriate and unprofessional statements of a sexual nature to the client. The parties stipulated to the facts and to a sanction of public reprimand. A panel appointed pursuant to Gov.Bar R. V(6)(D)(3) conducted a hearing on February 15, 2011, at which an employee of the bar association, the respondent, the grievant, and a therapist who is treating the respondent testified. Based on the stipulations, the testimony, and the exhibits (including the tape of the telephone call at issue), the panel recommended a six-month suspension, stayed, and one year of probation as a sanction for the respondent. The Board of Commissioners on Grievances and Discipline reviewed the panel's recommendation and adopted the recommended sanction. We concur.

**Factual Background**

{¶ 2} The facts in this case have been stipulated by the parties and formed the subject of testimony at the hearing.

{¶ 3} On November 23, 2009, respondent was appointed by the Summit County Court of Common Pleas, Domestic Relations Division, to represent the client in defending against a show-cause order. The show-cause order required the client to show why she should not be held in contempt for failing to make court-ordered child-support payments. Respondent had no previous acquaintance with the client before his appointment as her attorney.

{¶ 4} Respondent met with the client at his office twice, first on December 10, 2009, and next on January 15, 2010. In a telephone conference on January 21, 2010, the client informed respondent that she had obtained a new job, an event that would be significant in the show-cause proceedings. On January 29, 2010, respondent filed a motion for continuance of a hearing in the show-cause case on the grounds that the need to appear in court on February 9 might jeopardize the client's new employment.

{¶ 5} Sometime prior to February 2, 2010, the respondent and the client agreed that the best time for respondent to contact the client by telephone would be in the early morning when she was arriving home from work. On February 2, respondent called the client at about 6:15 a.m. Based on an earlier suggestion made by respondent about taping conversations, the client began recording the call partway through because she felt uncomfortable about the time respondent was calling and the fact that he was talking about matters other than the case. A copy of the recorded conversation on tape was offered as an exhibit at the hearing, and the parties stipulated to its authenticity.

{¶ 6} During the recorded portion of the call, which lasted approximately four minutes, respondent asked the client about her breast size, and he stated that she should show him her breasts as a reward, given that he was performing a great

deal of work for her for little compensation. Respondent further suggested that the client perform oral sex on him. Toward the end of the call, respondent returned the discussion to matters legitimately related to the legal representation.

{¶ 7} At no time did the respondent engage in any physical sexual activity with the client.

### Disciplinary Proceedings

{¶ 8} The client submitted her grievance to the Akron Bar Association in early March 2010. On March 26, 2010, respondent moved to withdraw as counsel for his client in the contempt case, and the domestic relations court granted the motion on April 2, 2010.

{¶ 9} The Akron Bar Association filed its complaint against respondent with the Board of Commissioners on Grievances and Discipline on August 16, 2010, and the case went to hearing before the panel on February 15, 2011. The case was submitted on stipulations, exhibits, and the testimony of four witnesses.

{¶ 10} An Akron Bar Association employee described the process by which the recording of respondent's conversation on the client's cell phone was re-recorded onto audiotape. Thereafter, the employee prepared a written transcription of the conversation.

{¶ 11} The client testified that she was surprised by the early call on February 2, 2010, and that she began to record it because the respondent told her he was just getting out of bed, which made her uncomfortable, and because he was not discussing her case. She testified that receiving the call was "like being raped without being touched" and that she felt as though she were reduced to mere property.

{¶ 12} The respondent testified that in defending the client against child-support contempt, he urged her both to stay out of prison and get a job, and he gave her some leads for jobs. His representation drew him into other cases in which the client was a party. Respondent tried to get the client's driver's license

restored, which would enhance her ability to hold a job. Respondent also filed a motion for continuance of a hearing date in order to allow the client to keep working at her job. Respondent characterized his statements during the February 2 telephone call as "absolutely sickening," an "abomination," and "reprehensible." Respondent stated that "no one should be treated" the way he had treated the client.

{¶ 13} Respondent is middle-aged and obtained his law license in 2004. He is in his second marriage and has two grown children. Respondent has been under treatment for depression, attention-deficit disorder, and diabetes for a number of years. Respondent takes medications for those conditions, and from mid-January to mid-March 2010, respondent failed to fill his prescriptions and went without his medication. The absence of medication made respondent anxious and more depressed, and he was "short and curt" with others. According to the respondent, the lack of medication and his resentment at the client's perceived ingratitude for his efforts, rather than sexual desire, caused his improper behavior. Respondent began consulting with therapist Jeffrey Durr in March 2010. Respondent said that Durr has worked with him to gain perspective regarding his perfectionist tendencies.

{¶ 14} The panel received testimony from Durr, a mental-health therapist and licensed clinical counselor. Durr met with the respondent for an initial counseling session on March 29, 2010, and by the time of the hearing had had 23 sessions with him. Durr testified that the respondent came in an anxious and depressed state and that he did not mention the grievance until May 2010. Durr stated that the respondent was "overgiving" and "raising the bar" in the sense that he put too much pressure on himself. Respondent also experienced resentment when others did not respond with gratitude for his efforts, including his clients. Durr opined that such resentment, together with the withdrawal of medications, was the basis for the respondent's improper conduct in this case. Durr also stated

that he believed respondent's assertion that respondent had no desire to be with the client in a physical sense. Durr stated that respondent understands the impropriety of what he did and that he has the tools to "stay centered" and avoid such misconduct in the future.

{¶ 15} As mitigating factors pursuant to Section 10(B)(2) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."), the parties stipulated that respondent had no prior disciplinary record, that he freely disclosed and adopted a cooperative attitude during the proceedings, and that he submitted character evidence in his favor. BCGD Proc.Reg. 10(B)(2)(a), (d), and (e). Additionally, the panel found a diagnosed and treated mental illness that contributed to the cause of the misconduct as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g).

{¶ 16} As aggravating factors, the panel identified respondent's selfish motive and the client's vulnerability with resulting harm to the client. BCGD Proc.Reg. 10(B)(1)(b) and (h). The panel found that respondent had violated the trust he owed the client by deliberately trying to hurt and humiliate her in order to make himself feel better.

### Disposition

{¶ 17} The parties stipulated to a public reprimand as a sanction for the respondent for violations of Prof.Cond.R. 8.4(h). Despite the stipulation, the panel recommended a six-month suspension, stayed, with one year of probation conditioned on continued successful treatment by Durr and respondent's regular physician. The board agreed with the panel recommendation, and the respondent has not objected. We concur with the board.

{¶ 18} Crucial to the question of what sanction to apply is the precise nature of respondent's misconduct. Ohio attorneys have a duty to refrain from soliciting or engaging in sexual activity with a client unless a consensual sexual

relationship existed between them when the client-lawyer relationship commenced. Prof.Cond.R. 1.8(j). Even before the adoption of the Rules of Professional Conduct, we consistently disapproved of lawyers engaging in sexual conduct with clients where the sexual relationship " 'arises from and occurs during the attorney-client relationship,' " and such misconduct " 'warranted a range of disciplinary measures depending on the relative impropriety of the situation, including actual suspension from the practice of law.' " *Butler Cty. Bar Assn. v. Williamson*, 117 Ohio St.3d 399, 2008-Ohio-1196, 884 N.E.2d 55, ¶ 8, quoting *Cleveland Bar Assn. v. Kodish*, 110 Ohio St.3d 162, 2006-Ohio-4090, 852 N.E.2d 160, ¶ 66. In extreme cases, disbarment was held to be warranted. *Disciplinary Counsel v. Sturgeon*, 111 Ohio St.3d 285, 2006-Ohio-5708, 855 N.E.2d 1221 (multiple instances of sexual conduct with clients, combined with deception, dishonesty, and lack of remorse). On the other hand, when a consensual relationship with a client did not actually compromise the client's interests, a public reprimand has sometimes been the sanction. *Disciplinary Counsel v. Detweiler*, 127 Ohio St.3d 73, 2010-Ohio-5033, 936 N.E.2d 498; *Allen Cty. Bar Assn. v. Bartels*, 124 Ohio St.3d 527, 2010-Ohio-1046, 924 N.E.2d 833.

{¶ 19} The case before us does not charge a violation of Prof.Cond.R. 1.8(j), but rather that respondent engaged in conduct that adversely reflected on his fitness to practice law in contravention of Prof.Cond.R. 8.4(h). The improper conduct consists of statements by telephone in the nature of sexual advances from the attorney to the client. The case shows a single instance of such misconduct, no actual sexual relationship, no associated misconduct, remorse on the part of the respondent, and ongoing medical and psychological treatment. In evaluating the evidence, the panel noted that the "respondent asserts anger rather than sexual gratification as the motivations for his inappropriate comments" and concluded that "[t]here is no evidence, other than the words he used, that this is not true."

But although the misconduct in this case did not involve an actual sexual relationship, it did involve a violation of the client's trust and a deliberate (and successful) attempt to demean her by exploiting her vulnerabilities. The cases involving consensual sexual conduct are therefore not on point.

{¶ 20} We adopt the recommendation of the board and order that respondent be suspended from the practice of law for six months. The entire suspension will be stayed on the conditions that respondent serve a one-year period of probation pursuant to Gov.Bar R. V(9) and that he continue successful treatment by his doctor and his therapist during the probation period. If respondent fails to comply with these conditions, the stay will be lifted, and respondent shall serve the six months' actual suspension followed by a one-year period of probation. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

James Campbell, for relator.

Buckingham, Doolittle & Burroughs, L.L.P., and Peter T. Cahoon, for respondent.

_____

7