DISCIPLINARY COUNSEL *v.* BUNSTINE.

[Cite as *Disciplinary Counsel v. Bunstine,* 136 Ohio St.3d 276,

2013-Ohio-3681.]

*Attorney misconduct—Soliciting sexual activity with a client—One-year suspension, with six months stayed on condition.*

(No. 2012-2049—Submitted April 9, 2013—Decided August 28, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 11-070.

_____

**Per Curiam**.

{¶ 1} Respondent, Edward Royal Bunstine of Chillicothe, Ohio, Attorney Registration No. 0030127, was admitted to the practice of law in Ohio in 1981.

{¶ 2} In a complaint filed on August 15, 2011, relator, disciplinary counsel, charged Bunstine with professional misconduct for soliciting a client. The complaint alleged that Bunstine offered to make "other arrangements" for Ashley Holdren to pay his fee in a child-custody matter. During a meeting at his office, Bunstine told Holdren he would come to her home that afternoon and that she should answer the door naked. Holdren believed that Bunstine wanted to have sex with her. Less than one hour after Holdren left the meeting, Bunstine called her cell phone. Holdren told Bunstine not to come to her home, but he did anyway.

{¶ 3} After a hearing, a panel of the Board of Commissioners on Grievances and Discipline found that Bunstine's conduct violated Prof.Cond.R. 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed when the client-lawyer relationship commenced) and 8.4(h) (prohibiting a lawyer from engaging in

conduct that adversely reflects on the lawyer's fitness to practice law). The panel declined to find a violation of Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

{¶ 4} The board adopted the panel's findings of fact and conclusions of law and recommends that we suspend Bunstine from the practice of law for one year, with six months stayed. Bunstine filed objections challenging all but a few of the board's factual findings, both of its findings of misconduct, the aggravating and mitigating factors found, and the recommended sanction.

{¶ 5} For the reasons that follow, we overrule Bunstine's objections, adopt the board's findings of fact and misconduct, and suspend Bunstine from the practice of law for one year, with six months stayed.

### Misconduct

*Factual Findings of the Panel and the Board*

{¶ 6} Based on evidence adduced at the panel hearing, the panel and board found the following facts relating to Bunstine's charged misconduct.

{¶ 7} On January 7, 2010, a court granted companionship of Ashley Holdren's two children to the children's biological father, William Scott. On January 19, 2010, Holdren retained Bunstine to seek relief from that judgment. Bunstine promptly filed a motion for a new trial or relief from judgment. Later he filed a motion to dismiss, arguing that the court lacked jurisdiction because Scott had improperly filed the action in Ross County, rather than Pike County. The court granted the motion to dismiss on May 13, 2010, and Bunstine closed Holdren's file.

{¶ 8} Soon thereafter, Scott filed a companionship action against Holdren in Pike County. Holdren appeared without counsel at a July 14, 2010 hearing and indicated that her potential attorney, Bunstine, could not be present. The court continued the hearing until July 21, 2010.

**{¶ 9}** Bunstine received a courtesy copy of the court's entry continuing Holdren's hearing. Holdren also separately contacted Bunstine's office and spoke to Bunstine's secretary about the matter. The secretary told Holdren that Bunstine would charge her $500 to represent her.

**{¶ 10}** On July 16, 2010, Holdren and Bunstine met for less than one hour in Bunstine's office. During the meeting, Holdren inquired about arranging payment of Bunstine's fees. In response, Bunstine suggested that he could come to Holdren's home. Holdren testified that he had said she could get rid of her fiancé, find a babysitter for her two children, and answer her door naked.

**{¶ 11}** Holdren testified that she had been disgusted, upset, and scared by Bunstine's statement and had immediately left his office. Soon after Holdren left, Bunstine called Holdren's cell phone and asked if he could come to her house. Holdren said no. Bunstine nevertheless drove 35 minutes to her home. Bunstine testified that he had gone to Holdren's home to see what would happen, but also to obtain documents and take photos "in anticipation of a continued representation of [Holdren]."

**{¶ 12}** When Bunstine arrived at Holdren's home, he was confronted in the driveway by Holdren's fiancé and her fiancé's father. After a discussion, Bunstine drove away. He returned a short time later and asked if he could return with his wife so that Holdren could explain to her what had happened.

**{¶ 13}** Bunstine left, and Holdren decided to leave with her children before he returned. Before she was able to leave, however, Bunstine returned with his wife. Mrs. Bunstine and Holdren had a conversation inside Holdren's home.

**{¶ 14}** After speaking with Mrs. Bunstine, Holdren permitted Bunstine to represent her at the hearing scheduled for July 21, 2010. Holdren testified that she did not have sufficient time to hire new counsel between Friday, July 16, 2010, and Wednesday, July 21, 2010.

**{¶ 15}** In August 2010, Holdren obtained new counsel. She later filed a grievance against Bunstine.

*Bunstine's Objections to Factual Findings*

**{¶ 16}** Bunstine raises numerous objections to the factual findings made by the panel and the board. These objections recycle Bunstine's testimony at the panel hearing and essentially argue that the panel should have credited his testimony over that of Holdren.[1]

**{¶ 17}** "Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24; *see also Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8. Upon reviewing the record, we defer to the panel's reasonable decision to credit Holdren's testimony over Bunstine's.

**{¶ 18}** Several of Bunstine's objections attempt to place blame on Holdren. As at the hearing, Bunstine claims that Holdren willingly participated in any inappropriate conduct and blamed Bunstine only when her fiancé "caught" her. According to Bunstine, Holdren invited him to her home and even drew him a map to the house. He testified that it was only after she invited him to her house that he had asked her whether she would answer the door naked. Bunstine says he never asked Holdren to get rid of her fiancé or to take her kids to a babysitter.

**{¶ 19}** The panel reasonably decided to credit Holdren's testimony to the contrary. Holdren testified that she had not invited Bunstine to her home or

---

1. In addition, Bunstine seeks to clarify three of the board's findings. First, he agrees with the board's finding that Holdren asked him on July 16 what payment arrangements could be made, but he would like that fact supplemented with the fact that Holdren had already been told by a member of Bunstine's staff that the fee was $500. Second, he asserts that the July 21, 2010 hearing at which he represented Holdren was not continued. Finally, he says that his wife left him on July 16, 2010, not after the July 21, 2010 hearing. None of these clarifications bears on whether Bunstine violated Prof.Cond.R. 1.8(j) and 8.4(h), however.

drawn him a map—indeed, she testified that she had told him not to come and that she had been disgusted by his proposition. She also testified that Bunstine had made the statement about getting her fiancé and children out of the house. But even if Holdren had initiated the inappropriate conversation, that would not negate Bunstine's misconduct. With regard to sexual conduct, we have said that "the burden is *on the lawyer* to ensure that all attorney-client dealings remain on a professional level." (Emphasis added.) *Disciplinary Counsel v. Booher*, 75 Ohio St.3d 509, 510, 664 N.E.2d 522 (1996); *see also Cleveland Bar Assn. v. Feneli*, 86 Ohio St.3d 102, 103, 712 N.E.2d 119 (1999).

{¶ 20} In addition, in his objections, Bunstine continues to make excuses for his inappropriate statement. Bunstine has repeatedly claimed that he had only "asked a question for the purpose of hearing the response." He says that it was unreasonable of Holdren to assume that he "wanted her to answer the door naked so that [they] could, thereafter, engage in sexual activity." According to Bunstine, he did not intend to receive an alternative payment for legal services or to solicit sexual activity.

{¶ 21} Regardless of Bunstine's motivation, he asked Holdren whether she would answer the door naked if he came to her house. Holdren perceived that comment as a solicitation of sexual activity: "[W]hat else would [Bunstine] be wanting to do, having me come to my door naked?" And Holdren testified that Bunstine had made this statement in response to her inquiry about fee arrangements. This supports the board's finding that Bunstine solicited Holdren.

{¶ 22} Finally, Bunstine objects to the finding that he had an attorney-client relationship with Holdren when he asked her the inappropriate question. The panel and board both concluded that an attorney-client relationship did exist at the time of the incident. We agree with that conclusion.

{¶ 23} "An attorney-client relationship may be created by implication based upon the conduct of the parties and the reasonable expectations of the

person seeking representation." *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, syllabus. Here, Holdren believed that Bunstine was her attorney at the time of the incident, and that belief was reasonable under the circumstances. Bunstine had recently represented Holdren in a matter involving the same issue—Scott's seeking visitation with Holdren's children—and Holdren told the judge on the Pike County court case that Bunstine would be her attorney. She met with Bunstine to discuss the case. Indeed, even Bunstine concedes—both at the hearing and in his present objections—that part of the reason he went to Holdren's house on July 16, 2010, was to get more information for the representation. He wanted to get additional documentation and to "tak[e] photographs to be used *for litigation*." (Emphasis added.) These facts support the panel's and board's conclusion that an attorney-client relationship existed at the time of Bunstine's comment.

{¶ 24} In light of the above, we overrule Bunstine's objections and adopt the board's factual findings.

*Findings of Misconduct*

{¶ 25} We agree with the panel and the board that Bunstine's conduct violated Prof.Cond.R. 1.8(j) and 8.4(h).

{¶ 26} Bunstine also objects to these legal conclusions, arguing that there is insufficient evidence of these violations. We disagree. The above facts provide clear and convincing evidence that Bunstine violated Prof.Cond.R. 1.8(j). The same facts also provide clear and convincing evidence that Bunstine violated Prof.Cond.R. 8.4(h), because we have found that such conduct adversely reflects on an attorney's fitness to practice law. *See, e.g., Akron Bar Assn. v. Miller*, 130 Ohio St.3d 1, 2011-Ohio-4412, 955 N.E.2d 359, ¶ 17-19; *Cleveland Metro. Bar Assn. v. Lockshin*, 125 Ohio St.3d 529, 2010-Ohio-2207, 929 N.E.2d 1028, ¶ 10-30 (interpreting DR 1-102(A)(6), the predecessor of Prof.Cond.R. 8.4(h));

*Disciplinary Counsel v. Quatman*, 108 Ohio St.3d 389, 2006-Ohio-1196, 843 N.E.2d 1205, ¶ 23 (same).

**Sanction**

**{¶ 27}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

**{¶ 28}** The panel and board found three aggravating factors. First, Bunstine acted with a selfish motive. BCGD Proc.Reg. 10(B)(1)(b). Second, his conduct resulted in harm to the victim. BCGD Proc.Reg. 10(B)(1)(h). Finally, Bunstine has committed a prior disciplinary offense. BCGD Proc.Reg. 10(B)(1)(a). In 2012, the court suspended Bunstine for six months, all stayed on the condition that he not commit any additional disciplinary violations. *See Disciplinary Counsel v. Bunstine*, 131 Ohio St.3d 302, 2012-Ohio-977, 964 N.E.2d 427, ¶ 17, 27 (finding violations of Prof.Cond.R. 8.4(c) [prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation], (d), and (h)). Bunstine objects to the board's finding with regard to all three aggravating factors. First, he says that the panel was wrong in concluding that he had a selfish motive; he had asked the question only to hear the answer. Second, Bunstine says his conduct did not harm a "victim," because Holdren was not a victim; she had invited Bunstine to her home. Finally,

Bunstine urges the court to ignore his prior disciplinary violation because he has been sanctioned only once in his 32 years of practice. We reject these arguments.

**{¶ 29}** As to mitigating factors, the panel and board found none. *See generally* BCGD Proc.Reg. 10(B)(2). Bunstine again objects, claiming that "being honest and truthful is a mitigating factor." But it is difficult to see how Bunstine has been honest and truthful throughout these proceedings. Bunstine's testimony and arguments throughout this matter have been inconsistent, which belies any claim of truthfulness. For example, Bunstine simultaneously insists that he was not Holdren's attorney on July 16, 2010, *and* that he drove to Holdren's house on July 16, 2010, to get more information to prepare for litigation in her case.

**{¶ 30}** The panel and board recommend that Bunstine be suspended from the practice of law for one year, with six months stayed. Bunstine objects to this sanction, arguing that his conduct was unlike the explicit sexual advances that resulted in harsh sanctions by this court in other cases. We overrule Bunstine's objection because, as discussed below, our decisions in cases involving similar violations indicate that the recommended sanction is appropriate under the circumstances.

**{¶ 31}** When an attorney makes " 'unsolicited sexual advances to a client, [the] attorney perverts the very essence of the lawyer-client relationship. Such egregious conduct most certainly warrants discipline.' " *Disciplinary Counsel v. Moore*, 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423, ¶ 15, quoting *In re Disciplinary Proceedings Against Gibson*, 124 Wis.2d 466, 474-475, 369 N.W.2d 695 (1985). We have issued a wide range of sanctions against attorneys who have solicited their clients, including actual suspension and even disbarment. *See Akron Bar Assn. v. Miller*, 130 Ohio St.3d 1, 2011-Ohio-4412, 955 N.E.2d 359, ¶ 18 (discussing range of sanctions imposed for this type of misconduct).

{¶ 32} Sanctions for inappropriate sexual comments or conduct generally range from a six-month to a two-year suspension, with part or all of the suspension stayed, depending on the severity of the misconduct and the aggravating and mitigating factors present. *See, e.g.*, *Miller* at ¶ 19-20 (imposing six-month stayed suspension and one year of probation on an attorney who made sexual advances to a client over the telephone but later expressed remorse and sought medical and psychological treatment); *Moore* at ¶ 3, 7, 19-20 (imposing one-year suspension, conditionally stayed, and two years of probation on an attorney who had had consensual sex with one client and made graphic sexual comments to another client but later expressed remorse, sought psychological treatment, and submitted character references from local prosecutor and judges); *Feneli*, 86 Ohio St.3d at 103-104, 712 N.E.2d 119 (imposing 18-month suspension with six months stayed on an attorney who had had sex with a client and had offered to reduce his legal fees in exchange for sexual acts); *Quatman*, 108 Ohio St.3d 389, 2006-Ohio-1196, 843 N.E.2d 1205, ¶ 23-24 (imposing one-year stayed suspension and two years of probation on an attorney who had commented on and touched his client's breasts); *Akron Bar Assn. v. Williams*, 104 Ohio St.3d 317, 2004-Ohio-6588, 819 N.E.2d 677, ¶ 3-6, 16 (imposing two-year suspension with 18 months conditionally stayed on an attorney who had engaged in a sexual relationship with a vulnerable client in lieu of charging her fees for his legal services, then lied about his conduct under oath).

{¶ 33} Here, the aggravating factors support a sanction in the middle of this range. Bunstine was recently disciplined, and his current misconduct harmed a client in a vulnerable position. We have previously observed that clients who are concerned about child-custody issues—and especially a client who has a hearing in five days—are in a particularly vulnerable position. *Moore* at ¶ 12; *see also Williams* at ¶ 3. And the more vulnerable a client is, "the heavier is the obligation upon the attorney not to exploit the situation for his own advantage."

*Booher*, 75 Ohio St.3d at 510, 664 N.E.2d 522. For these reasons, we conclude that an actual suspension is warranted here. However, we decline to sanction Bunstine as severely as attorneys who have engaged in an ongoing pattern of sexual solicitation or activity with one or more clients.

{¶ 34} Accordingly, we suspend Edward Royal Bunstine from the practice of law for a period of one year, with six months stayed on the condition that he commit no further misconduct. Costs are taxed to Bunstine.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'NEILL, J., dissents and would impose an indefinite suspension.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Heather Hissom Coglianese, Assistant Disciplinary Counsel, for relator.

Edward Royal Bunstine, pro se.

_____