[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Bunstine,* Slip Opinion No. 2015-Ohio-3729.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3729

DISCIPLINARY COUNSEL *v.* BUNSTINE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Bunstine,* Slip Opinion No. 2015-Ohio-3729.]**

*Attorneys at law—Misconduct—Existence of attorney-client relationship not proven by clear and convincing evidence—Attorney failed to cooperate in disciplinary investigation—Six-month suspension with no credit for time served under prior suspension.*

(No. 2014-1392—Submitted February 3, 2015—Decided September 16, 2015.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2013-028.

_____

**Per Curiam.**

{¶ 1} Respondent, Edward Royal Bunstine of Chillicothe, Ohio, Attorney Registration No. 0030127, was admitted to the practice of law in Ohio in 1981. Since 2012, we have twice disciplined Bunstine for engaging in professional

misconduct—first imposing a stayed six-month suspension for his dishonest conduct in a criminal case involving acquaintances and then imposing a one-year suspension with six months conditionally stayed after Bunstine made a sexually suggestive request of a client and drove to her home to see if she would comply. *See Disciplinary Counsel v. Bunstine*, 131 Ohio St.3d 302, 2012-Ohio-977, 964 N.E.2d 427; *Disciplinary Counsel v. Bunstine* ("*Bunstine II*"), 136 Ohio St.3d 276, 2013-Ohio-3681, 995 N.E.2d 184.

{¶ 2} In a May 13, 2013 complaint, relator, disciplinary counsel, charged Bunstine, in Count One, with a number of violations of the Rules of Professional Conduct arising from his alleged representation of Gary Freeland in a criminal matter and, in Count Two, with failing to cooperate in the ensuing disciplinary investigation. A panel of the Board of Commissioners on Grievances and Discipline[1] conducted a hearing on February 10, 2014. The panel overruled Bunstine's motion to dismiss the complaint but unanimously dismissed the charges as to four of the alleged rule violations, for insufficient evidence. The panel found that although Bunstine denied having agreed to represent Freeland, an attorney-client relationship nonetheless arose by implication and that in the context of that attorney-client relationship, Bunstine failed to provide competent representation, knowingly made a false statement of fact to a tribunal, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, engaged in conduct prejudicial to the administration of justice, and failed to cooperate in relator's investigation. For this misconduct, the panel recommended that Bunstine be suspended from the practice of law for two years, with 18 months stayed and no credit for any time served under the suspension we imposed on August 28, 2013, in *Bunstine II*.

---

[1] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

**{¶ 3}** The board adopted the panel's findings of fact and conclusions of law but unanimously recommended that Bunstine be indefinitely suspended from the practice of law with credit for time served under the *Bunstine II* suspension. Bunstine objects and argues that the record does not support the board's findings of fact and misconduct and that the entire complaint should be dismissed because, he claims, relator failed to afford him due process.

**{¶ 4}** While we agree that Bunstine failed to cooperate with relator's investigation into the underlying allegations of misconduct, we find that the evidence offered in support of the underlying allegations is not clear and convincing. Therefore, we dismiss Count One of relator's complaint; find that Bunstine failed to cooperate in the ensuing disciplinary investigation, as alleged in Count Two, in violation of Prof.Cond.R. 8.1(b) and former Gov.Bar R. V(4)(G) (now Gov.Bar R. V(9)(G)); overrule Bunstine's remaining objections; and suspend him from the practice of law for six months with no credit for time served under his prior suspension.

### Misconduct

### Count One—The Underlying Allegations of Misconduct

**{¶ 5}** In Count One of the complaint, relator alleged multiple rule violations, including that Bunstine failed to provide competent representation to a client, Gary Wayne Freeland, that he made a false statement to a tribunal, that he engaged in dishonesty, fraud, deceit, or misrepresentation, and that his conduct was prejudicial to the administration of justice. The threshold issue, however, is whether an attorney-client relationship ever existed between Bunstine and Freeland.

**{¶ 6}** In December 2011, Freeland was arrested on a five-count indictment and asked his daughter, Sharon, to call Bunstine, who had previously represented him in divorce proceedings. It is undisputed that Bunstine visited Freeland at the

Ross County jail later that day and that he instructed Freland to have the public defender's office represent him at his arraignment.

{¶ 7} After the arraignment, Bunstine met with Freland at the jail on several occasions and continued to discuss the case with Sharon, who delivered $10,000 to him. The purpose of that $10,000 payment and Bunstine's role in Freland's criminal defense were contested at the panel hearing. In his videotaped deposition, Freland testified that once Sharon had delivered the money to Bunstine, he believed Bunstine was his attorney. Bunstine, in contrast, maintained that he never represented Freland in his criminal matter because he had reserved the right to review the discovery before accepting the case and the public defender initially refused to release discovery to him until he entered an appearance in the case—which he refused to do.

{¶ 8} At a hearing on the public defender's motion to withdraw from Freland's case, the judge inquired about Bunstine's involvement in the case. He asked Bunstine whether he had received money from Freland, and Bunstine replied, "No, your honor." On further questioning, Bunstine acknowledged that he had received $10,000 from Sharon. But when the judge inquired, "Why don't I have an appearance from ya?" Bunstine replied, "I represent Sharon Freland, your honor." When asked to describe the nature of his representation, Bunstine stated, "She's asked me to look into this matter."

{¶ 9} Freland's daughter, Sharon, served as his attorney-in-fact and communicated with Bunstine on his behalf. She testified at the hearing, and the parties submitted her deposition transcript as a stipulated exhibit. The board's findings demonstrate that Sharon's testimony was often contradictory— sometimes supporting Freland's version of events and at other times supporting Bunstine's position.

{¶ 10} For example, Sharon remembered that Bunstine told her that he would not agree to represent her father or enter an appearance in his case until he

4

first had read over the discovery and decided if he could help. She recalled that Bunstine said that they would need to hire a private investigator and a psychologist and have Freeland take a polygraph test, and she understood that the $10,000 payment she made to Bunstine would be used to pay for those services. She also testified that she shared all of this information with Freeland and that he had agreed.

{¶ 11} The board noted that Sharon initially denied having intended to retain Bunstine, stating, "I can't say that I gave him money to be dad's attorney." Rather, she believed that the money she gave Bunstine was going to help get information regarding her father's case and acknowledged that he "already had the State" representing him. But she later contradicted herself when relator asked who she thought was her dad's attorney, replying, "I truly believed it was Bunstine."

{¶ 12} The board found that Freeland had a reasonable expectation that an attorney-client relationship existed once he paid Bunstine, and it therefore determined that an attorney-client relationship arose by implication. *See, e.g.*, *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, syllabus (recognizing that an attorney-client relationship can be formed by implication based on "the conduct of the parties and the reasonable expectations of the person seeking representation"). The board also found that Bunstine (1) failed to provide competent representation to Freeland, (2) knowingly made false statements to the court about his role in Freeland's case, (3) engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and (4) engaged in conduct that was prejudicial to the administration of justice.

{¶ 13} Bunstine objects to the board's findings of fact and misconduct. He argues that he reserved the right to review the discovery in Freeland's case before deciding whether he would represent Freeland. Therefore, he contends that relator has failed to prove that an attorney-client relationship came into being

or that he engaged in any additional misconduct in the Freeland matter. For the reasons that follow, we agree.

{¶ 14} In attorney-discipline matters, the relator must prove by clear and convincing evidence the facts necessary to establish an ethical violation. *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 708 N.E.2d 193 (1999), paragraph two of the syllabus. Clear and convincing evidence is an intermediate measure of proof that requires evidence sufficient to produce " 'a firm belief or conviction as to the facts sought to be established.' " *Id.* at 331, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 15} Having considered the board's findings of fact and reviewed the record in this case, we acknowledge that there is some evidence tending to show that an attorney-client relationship arose by implication. But given (1) Sharon's role as Freeland's attorney-in-fact, (2) her knowledge of Bunstine's intention not to accept Freeland's representation until he reviewed the discovery and determined whether he could help, and (3) the contradictions the board noted in her testimony, we are not firmly convinced that Freeland had a reasonable expectation that Bunstine was his attorney. Nor are we convinced that Bunstine's statements to the judge about his involvement in the Freeland matter were knowingly false. Therefore, we sustain Bunstine's objections as to Count One of relator's complaint and dismiss that count in its entirety.

### Count Two—Failure to Cooperate

{¶ 16} On March 7, 2012, relator sent Bunstine a letter of inquiry regarding a grievance filed by a Ross County deputy prosecuting attorney. Relator alleged that Bunstine had spoken to Gary Freeland about his criminal matter without first seeking permission of the public defender, who was at that time Freeland's attorney of record, and that his conduct violated Prof.Cond.R. 4.2 (prohibiting a lawyer from communicating about the subject of the representation with a person the lawyer knows to be represented by another lawyer unless the

lawyer has the consent of the other lawyer or is authorized by law or a court order).

{¶ 17} Bunstine responded to this initial letter of inquiry but failed to respond to two subsequent letters in which relator sought additional information. Relator deposed Bunstine pursuant to a subpoena on June 28, 2012. Bunstine testified that he failed to respond to relator's second and third letters of inquiry because he "didn't believe it was relevant" and "didn't want to waste [his] time," and that he had not notified relator of this position. While he was aware of the open disciplinary investigation and acknowledged that he had a duty to cooperate in the investigation, he explained, "I felt that I responded appropriately to your letter of inquiry initially and that was it."

{¶ 18} Therefore, the board found that Bunstine elected not to respond to a demand for information from a disciplinary authority in violation of Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) and former Gov.Bar R. V(4)(G) (prohibiting a lawyer from neglecting or refusing to assist in a disciplinary investigation).

{¶ 19} Bunstine objects, arguing that he was not required to respond to relator's subsequent inquiries because the questions posed were not relevant to the alleged violation of Prof.Cond.R. 4.2 and the letters failed to allege any other rule violations.

{¶ 20} Former Gov.Bar R. V(4)(C)(1) (now Gov.Bar R. V(9)(C)(1)) provides that disciplinary counsel or a certified grievance committee "shall review and may investigate any matter filed with it or that comes to its attention and may file a complaint pursuant to this rule in cases where it finds probable cause to believe that misconduct has occurred." And Prof.Cond.R. 8.1(b) and former Gov.Bar R. V(4)(G) both require attorneys to cooperate in disciplinary investigations.

**{¶ 21}** Former Gov.Bar R. V(4)(I)(2) (now Gov.Bar R. V(10)(A)) provides that no disciplinary investigation shall be completed without first giving the attorney who is the subject of the investigation notice of each allegation and the opportunity to respond. It does not require that relator allege specific rule violations in the initial stages of his investigation. Rather, it provides that such disclosures must be made and the respondent be given an opportunity to respond before the investigation is completed and the complaint is filed. Thus, relator's failure to allege a specific rule violation at the earliest stages of his investigation does not excuse Bunstine's failure to respond to relator's inquiries.

**{¶ 22}** Nor do we find that the charges arising from Bunstine's admitted failure to respond to relator's second and third letters of inquiry should be dismissed based on Bunstine's claim that he received insufficient time to respond to relator's draft complaint. There is no evidence that he requested an extension of time or that such a request was refused, and he did not raise this argument in his answer to the complaint once it was certified to the board by the probable-cause panel. Therefore, we overrule Bunstine's remaining objections and adopt the board's findings of fact and misconduct with respect to Count Two of the complaint.

### Sanction

**{¶ 23}** In determining the appropriate sanction to impose for attorney misconduct, we consider the ethical duties the lawyer violated, the presence of aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B),[2] and the sanctions imposed for comparable misconduct.

**{¶ 24}** None of the mitigating factors listed in BCGD Proc.Reg. 10(B)(2) are present. But the following aggravating factors are relevant: Bunstine's two prior disciplinary offenses, a pattern of misconduct demonstrated by the three

---

[2] Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

disciplinary proceedings initiated against Bunstine in a three-year time span, his failure to cooperate in the disciplinary process, and his refusal to acknowledge the wrongful nature of his conduct. *See* BCGD Proc.Reg. 10(B)(1)(a), (c), (e), and (g).

**{¶ 25}** The panel and board recommended sanctions based on their findings that Bunstine engaged in most of the charged misconduct, but we have only found violations of Prof.Cond.R. 8.1(b) and former Gov.Bar R. V(4)(G). In *Cleveland Metro. Bar Assn. v. Jaffe*, 121 Ohio St.3d 260, 2009-Ohio-763, 903 N.E.2d 628, ¶ 2-3, 7, we imposed a six-month suspension on a previously disciplined attorney who failed to respond to a disciplinary investigation in violation of former Gov.Bar R. V(4)(G).

**{¶ 26}** In light of Bunstine's misconduct and the fact that this is his *third* disciplinary offense in three years, a greater sanction might be warranted. But given that the charges pending in this case have prevented Bunstine from seeking reinstatement from the one-year suspension we imposed on August 28, 2013, in *Bunstine II*, we find that a six-month suspension is appropriate.

**{¶ 27}** Accordingly, Edward Royal Bunstine is suspended from the practice of law in Ohio for six months with no credit for the time served under the suspension imposed in *Bunstine II*. Costs are taxed to Bunstine.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, and FRENCH, JJ., concur.

LANZINGER, J., dissents and would indefinitely suspend the respondent from the practice of law in Ohio.

O'NEILL, J., dissents and would publically reprimand the respondent.

––––––––––––––––

Scott J. Drexel, Disciplinary Counsel, and Stacy Solochek Beckman and Michelle R. Bowman, Assistant Disciplinary Counsel, for relator.

Edward R. Bunstine, pro se.

_____