[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Owens,* Slip Opinion No. 2018-Ohio-5080.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-5080

DISCIPLINARY COUNSEL *v*. OWENS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Owens,* Slip Opinion No. 2018-Ohio-5080.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation and engaging in conduct prejudicial to the administration of justice—Conditionally stayed one-year suspension.*

(No. 2018-0257—Submitted May 22, 2018—Decided December 19, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-025.

————————————

**Per Curiam.**

{¶ 1} Respondent, Robert Morris Owens, of Delaware, Ohio, Attorney Registration No. 0069866, was admitted to the practice of law in Ohio in 1998.

**{¶ 2}** In a May 30, 2017 complaint, relator, disciplinary counsel, alleged that Owens violated three professional-conduct rules in his efforts to purge a client's contempt for failure to pay court-ordered spousal support and obtain that client's release from jail.

**{¶ 3}** Based on the parties' stipulations of fact and stipulated exhibits and the evidence presented at the hearing, a panel of the Board of Professional Conduct found that Owens committed the charged misconduct and recommended that he be suspended from the practice of law in Ohio for six months and that he be required to complete at least two hours of continuing legal education ("CLE") regarding compliance with client-trust-account regulations. The board adopted the panel's report and recommendation with two minor alterations. Owens objects, arguing that the record and our precedent do not support the board's findings of fact, conclusions of law, or recommended sanction and that the board exhibited bias against him.

**{¶ 4}** For the reasons that follow, we overrule Owens's objections to the board's findings of fact and conclusions of law and adopt the board's findings of fact and misconduct. We also overrule his objection alleging that the board improperly disregarded his evidence and amended closing brief based on bias it harbored against him. However, we sustain Owens's objection to the recommended sanction in part and suspend him from the practice of law for one year, all stayed on conditions.

### The Board's Findings of Misconduct

**{¶ 5}** Owens represented Edward J. Bittner in a divorce proceeding in the Delaware County Court of Common Pleas. Pursuant to a 2012 divorce decree, Bittner was required to pay his former wife, Delores I. Bittner, spousal support of $8,000 a month for 144 months. In October 2013, Delores filed a motion alleging that Bittner was in contempt of court for failure to pay spousal support and had accumulated an arrearage of $26,378.71. Following an April 2014 hearing, a

magistrate found that Bittner was $60,861.47 in arrears and ordered Bittner's former employer to allocate that amount plus a 2 percent administrative fee to Delores from Bittner's retirement plan.

{¶ 6} In February 2015, Judge J. Timothy Campbell adopted the magistrate's findings, over objections from both parties and the former employer. He ordered Bittner's former employer to prepare and submit a qualified domestic-relations order allocating $62,078.69 from Bittner's retirement plan to Delores. Judge Campbell also found Bittner in contempt for failure to pay spousal support and ordered him to serve 30 days in jail but gave him the opportunity to purge his contempt by bringing all arrearages current within 30 days of the order. The Fifth District Court of Appeals affirmed that judgment in November 2015. *Bittner v. Bittner*, 2015-Ohio-4707, 49 N.E.3d 821 (5th Dist.).

{¶ 7} On Friday, July 29, 2016, Judge Campbell again found Bittner in contempt of court for failure to pay spousal support and ordered him to immediately serve 30 days in jail. The court offered Bittner the opportunity to purge his contempt and secure his release from jail by paying his $58,242.93 spousal-support arrearage in full.

{¶ 8} After the hearing, Bittner told Owens that his current wife, Yulia Nedelko, would wire funds into Owens's client trust account to pay the arrearage and obtain his release. Owens went to his bank, where he obtained a counter check for $58,242.93 drawn on his client trust account. At that time, his client trust account contained $79,070.03, approximately $74,000 of which he held on behalf of 19 clients—but none of those funds belonged to Bittner. While Owens was at the bank, he obtained a "run sheet" from the teller, which showed that no money had been wired into the account on Bittner's behalf since the hearing that day. Thereafter, Owens presented the counter check to the Delaware County Child Support Enforcement Agency ("CSEA") and received a receipt, which he submitted to the common pleas court to secure Bittner's release from jail.

**{¶ 9}** For unknown reasons, Nedelko did not transfer any funds into Owens's client trust account on Friday, July 29, 2016. Owens made no effort to determine whether the funds had been wired into the account on July 30 or 31, 2016. On Monday, August 1, Owens spoke with Bittner and learned that the funds had not been wired. But Owens took no action either to protect the client funds held in his client trust account or to disclose Bittner's nonpayment to the court. That same day, Nedelko wrote a $58,242.93 check payable to Owens and overnighted it to him.

**{¶ 10}** Owens received Nedelko's check on August 2, signed it over to Child Support Payment Central ("CSPC"), and issued a stop-payment order on the counter check he had previously issued to CSEA from his client trust account. He then took Nedelko's check to CSEA to replace that check. Although he explained that the counter check might not clear due to its amount, he failed to inform anyone at the agency that he had placed a stop-payment order on it. CSEA's director, Joyce Bowens, told Owens that CSPC would not accept the replacement check because it was not made payable directly to the agency.

**{¶ 11}** Bowens left messages for Owens on August 3 and 8, but he waited until August 9 to return her calls. At that time, Bowens informed Owens that CSPC had attempted to process his counter check but that the bank had returned it due to his stop-payment order. She offered him several acceptable ways to present payment to the agency but suggested that the best method was to wire the money directly to CSEA because it could be immediately recorded as a cash payment. Bowens left messages for Owens again on August 11 and 16. When he returned her call on August 18, he informed her that Bittner was attempting to resolve the matter. Because Owens had made no effort to retrieve his client-trust-account counter check, a CSEA representative personally delivered it to him on August 22.

**{¶ 12}** In the meantime, Delores filed a motion to impose the 30-day jail sentence ordered by Judge Campbell and for attorney fees and sanctions based on

4

Bittner's failure to comply with the court's order to pay his spousal-support arrearage. Owens appeared at a September 6, 2016 hearing on that motion, but Bittner did not appear, even after the court denied his motion to appear by telephone. The court found that Bittner remained in contempt of its prior order and also noted that he had accumulated an additional arrearage of $24,000 for the months of July, August, and September. The court ordered that Bittner be remanded to jail for 30 days and directed that a warrant be issued for his arrest, but it again offered him the opportunity to purge his contempt by bringing his spousal support current. The court also ordered Owens and Bittner to pay Delores's attorney fees of $1,809.60. The record shows that CSPC credited a $58,242.93 payment to Bittner's account on September 16, 2016.

{¶ 13} The board found that Owens's conduct violated three professional-conduct rules. First, the board found that Owens violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) by falsely representing that Bittner had paid his spousal-support arrearage when he had not. Next, it found that Owens violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) by commencing and participating in a series of events that further delayed Delores's long-overdue spousal support and necessitated further court proceedings to collect the arrearage. Finally, the board found that Owens violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) by recklessly placing the funds of 19 clients in jeopardy.

**Recommended Sanction**

{¶ 14} When considering the appropriate sanction for attorney misconduct, the board took into account several relevant factors, including the ethical duties that the lawyer violated, relevant aggravating and mitigating factors, and the sanctions imposed in similar cases. *See* Gov.Bar R. V(13)(A).

**{¶ 15}** As aggravating factors, the board found that Owens engaged in multiple offenses and caused harm to his client's former wife, who incurred $1,809.60 in additional attorney fees and waited an additional month to collect her long-overdue spousal support. *See* Gov.Bar R. V(13)(B)(4) and (8). And because Owens attempted to minimize his misconduct and repeatedly characterized his actions as mere mistakes, the board also found that he failed to acknowledge the wrongful nature of his misconduct. *See* Gov.Bar R. V(13)(B)(7).

**{¶ 16}** The board found that just two mitigating factors are present: Owens has no prior disciplinary record and he submitted letters attesting to his good reputation in the community. *See* Gov.Bar R. V(13)(C)(1) and (5). The board declined to attribute any mitigating effect to the fact that Owens paid approximately $1,800 of Delores Bittner's attorney fees, noting that he paid those fees more than one year after the court ordered him to do so, nearly two months after the court's order was affirmed on appeal, and just one day before his disciplinary hearing. *See* Gov.Bar R. V(13)(C)(3) (providing that a *timely* good-faith effort to make restitution may be considered as a mitigating factor weighing in favor of a less severe sanction).

**{¶ 17}** In determining the appropriate sanction for Owens's misconduct, the board considered two cases in which we imposed fully stayed six-month suspensions on attorneys who violated Prof.Cond.R. 8.4(c), (d), and (h).

**{¶ 18}** In *Disciplinary Counsel v. Bunstine*, 131 Ohio St.3d 302, 2012-Ohio-977, 964 N.E.2d 427, the attorney fabricated an attorney-client relationship and refused to surrender documents to law-enforcement officials, in an effort to shield himself from potential criminal liability. Although he acted with a selfish motive and refused to acknowledge the wrongful nature of his conduct, he had no prior discipline and entered a no-contest plea to misdemeanor counts of disorderly conduct arising out of the incident. And in *Disciplinary Counsel v. Koehler*, 132 Ohio St.3d 465, 2012-Ohio-3235, 973 N.E.2d 262, the attorney signed his client's

name to a letter of authorization, improperly notarized the document by using his secretary's notary stamp and signing her name, and then used the fraudulent document to access a bank account on his client's behalf. However, no aggravating factors were present and Koehler had no prior discipline, did not act with a selfish or dishonest motive, and demonstrated a cooperative attitude toward the disciplinary proceeding, although he did not appear remorseful.

{¶ 19} Emphasizing Owens's failure to acknowledge his misconduct or accept responsibility for his actions, the board concluded that his misconduct warranted a more severe sanction than that imposed in *Bunstine* and *Koehler*. Therefore, the board recommended that we suspend Owens from the practice of law for six months with no stay, and that we require him to complete two hours of CLE focused on client-trust-account management as a condition of his reinstatement.

**Owens's Objections**

*Objections to the Board's Findings of Fact and Conclusions of Law*

{¶ 20} In his first two objections to the board's report, Owens argues that the board's findings of fact and conclusions of law are not supported by sufficient evidence and are contrary to law. He contends that the board disregarded much of his testimony and insists that he not only took appropriate action to get Bittner's spousal-support arrearage paid but that he did so without placing any client funds in jeopardy. We disagree.

{¶ 21} We have stated, "[I]t is of no consequence that the board's findings of fact are in contravention of respondent's or any other witness's testimony. 'Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.' " *Disciplinary Counsel v. Zingarelli*, 89 Ohio St.3d 210, 217, 729 N.E.2d 1167 (2000), quoting *Cross v. Ledford*, 161 Ohio St. 469, 478, 120 N.E.2d 118 (1954). "Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility

determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

{¶ 22} Here, the panel heard and considered conflicting evidence from several witnesses, including Owens. At the hearing and in his objections, Owens insisted that he had every reason to believe that Nedelko had wired $58,242.93 to him before he delivered his client-trust-account check to CSEA. Based on that belief, he contends that he did not jeopardize client funds or make a misrepresentation to CSEA and the court when he issued that check to satisfy Bittner's spousal-support obligation and secure Bittner's release. But the record demonstrates that Owens's beliefs were not reasonable.

{¶ 23} It is undisputed that Owens had a duty to protect the client funds entrusted to his care. *See* Prof.Cond.R. 1.15. But Owens himself testified that after he obtained the counter check from his bank and verified that Bittner's funds had not been wired into his client trust account, he went directly to the CSEA office— less than five minutes away—and handed over a $58,242.93 check drawn on his client trust account. Although he testified that he relied on his wealthy, long-term client's assurances that a wire transfer was imminent, that client had been jailed for contempt based on his failure to pay any spousal support for nearly four years. Owens also testified that he relied on a Delaware County CSEA employee's representation that CSPC (a separate but related agency located in Franklin County) would not process his check until Wednesday, August 3, at the earliest. However, that employee testified only that the earliest the check would be mailed from CSEA to CSPC was Monday, August 1, not that CSPC would not process it until Wednesday or later.

{¶ 24} Thus, there is ample evidence to support the board's conclusions that (1) Owens knew or acted with reckless disregard as to whether Bittner's funds were or were not in his client trust account when he presented to CSEA a check that was

drawn on that account and (2) Owens placed the funds of 19 other clients at risk when he relied on Bittner's representations and the anticipated float time of his client-trust-account check (i.e., the time that it would take CSEA and the bank to process that check) to protect his clients' funds. There is also sufficient evidence to establish that Owens made a material misrepresentation when he presented a $58,242.93 *client-trust-account check* to CSEA in order to satisfy Bittner's spousal-support obligation, thereby representing to CSEA and the court that those funds had been deposited into that account on Bittner's behalf, either with knowledge or with reckless disregard as to whether *any* such funds had been deposited into that account. And the court did rely on that misrepresentation, as it released Bittner from jail after receiving notice of the payment from Owens.

{¶ 25} Our finding that Owens made a material misrepresentation would not change even if we were to find that he did not have actual knowledge that Bittner's funds had not been deposited into his client trust account when he issued the check and presented the receipt to the court. Once he learned that the facts were not as he originally believed, he had a duty to step forward and correct his prior representations to avoid engaging in misrepresentation by omission. *See, e.g.*, Prof.Cond.R. 3.3(a)(1) (prohibiting an attorney from knowingly making a false statement of fact or law to a tribunal or failing to correct a false statement of material fact or law the lawyer previously made to the tribunal); *Miles v. McSwegin*, 58 Ohio St.2d 97, 99, 388 N.E.2d 1367 (1979) ("It is well established that an action for fraud and deceit is maintainable not only as a result of affirmative misrepresentations, but also for negative ones, such as the failure of a party to a transaction to fully disclose facts of a material nature where there exists a duty to speak").

{¶ 26} Instead of taking reasonable action to correct his misrepresentation, however, Owens waited nearly six weeks for Bittner, the contemnor and primary beneficiary of Owens's misrepresentation, to satisfy the prerequisite for his release

from jail by purging his contempt. That delay further postponed Delores's spousal-support payment and also interfered with the court's ability to enforce its judgments.

**{¶ 27}** Based on the foregoing, we overrule Owens's objections to the board's findings of fact and conclusions of law and adopt the board's findings that Owens's conduct violated Prof.Cond.R. 8.4(c), (d), and (h).

*Objection to the Board's Reference to Owens's Prior Counsel*

**{¶ 28}** In his fourth objection, Owens argues that the board exhibited bias against him when it mentioned that his counsel in this disciplinary proceeding "curiously" withdrew from the representation after filing a posthearing memorandum and then it failed to discuss Owens's testimony or the arguments presented in the amended pro se closing brief that he filed. In support of this argument, he contends that in contrast, relator's closing brief "seemed to be re-printed nearly word-for-word" in the board's report. Having reviewed the entire record, we find no evidence of improper bias based on the withdrawal of Owens's former counsel, and further, that the board's failure to discuss Owens's testimony did not indicate any bias against him but instead reflected its determination that his testimony was not credible. Therefore, we overrule this objection.

*Objection to the Recommended Sanction*

**{¶ 29}** In his third objection, Owens contends that the sanction recommended by the board is excessive in light of this court's precedent and additional mitigating factors that he claims are present in this case. He argues that the complaint should be dismissed and no discipline should issue because relator failed to prove the alleged misconduct by clear and convincing evidence. Alternatively, he suggests that because his "mistakes" caused "little to no harm" and present an "isolated incident" in his otherwise unblemished career, only a public reprimand is justified.

{¶ 30} Owens suggests that the board failed to attribute mitigating effect to his payment of Delores's legal fees, his professed lack of a dishonest intent or motive, his delivery of a valid check to CSEA (albeit one that violated CSPC's internal policy), his efforts to notify CSEA that his client was not able to transfer the funds as expected, and his participation in CLE focused on ethics and client-trust-account management. These factors, however, warrant little, if any, mitigating effect.

{¶ 31} As the board found, Owens's payment of Delores's attorney fees was not timely and it is not clear from the record before us that Owens acted entirely without a dishonest or selfish motive. Neither Owens's efforts to inform CSEA of the failed transfer nor his delivery of a check that did not comply with agency policies is sufficient to overcome his failure to notify the court that the payment that secured his client's release from jail had not, in fact, occurred. And although Owens completed 9 hours of CLE, many of which focused on client-trust-account management and ethics, we note that pursuant to Gov.Bar R. X, he had a preexisting obligation to complete at least 24 hours of CLE during the 2017-2018 biennium.

{¶ 32} Because we have found that Owens committed all of the misconduct alleged in relator's complaint, we reject his call for an outright dismissal of this case. We also find that the three cases that Owens cites, in the alternative, in support of a public reprimand for his misconduct are factually distinguishable from this case.

{¶ 33} For example, in *Cleveland Bar Assn. v. Cox*, 98 Ohio St.3d 420, 2003-Ohio-1553, 786 N.E.2d 454, we publicly reprimanded an attorney who failed to keep a client informed about the status of the client's case and then intentionally lied to a bar-association grievance-committee member about his misconduct. But unlike Owens, who repeatedly denied having made any misrepresentation to CSEA or the court, Cox told the truth when confronted with evidence of his misrepresentation and his misconduct caused little harm.

**{¶ 34}** In *Disciplinary Counsel v. Cuckler*, 101 Ohio St.3d 318, 2004-Ohio-784, 804 N.E.2d 966, we publicly reprimanded an attorney who accepted and used the title of "Deputy Chief Legal Counsel" while working for the speaker of the Ohio House of Representatives for more than a year before he was licensed to practice law, *id.* at ¶ 2. Despite his title, however, the evidence showed that Cuckler actually performed the work of a legislative aide or law clerk under the supervision of a licensed attorney. And in contrast to the record here, the record in *Cuckler* contained no evidence that anyone had relied on Cuckler's misrepresentations to their detriment.

**{¶ 35}** We are not persuaded that the decisions cited by Owens support the imposition of a public reprimand in this case. Nor, however, are we convinced that the six-month suspension recommended by the board is the appropriate sanction for Owens's misconduct.

**{¶ 36}** Instead, we find *Mahoning Cty. Bar Assn. v. Cochran*, 152 Ohio St.3d 448, 2018-Ohio-4, 97 N.E.3d 454, to be instructive. In that case, a federal judge declared a mistrial in the case of an attorney charged with obstruction of justice and making a false statement to law enforcement, among other offenses, and later acquitted the attorney on two of the charged counts. *Id.* at ¶ 4-6. After the government indicated its intention to retry the attorney on three remaining charges, he agreed to plead guilty to a single count of misbehavior in the presence of the court in violation of 18 U.S.C. 401(1) and admitted that he gave two incomplete and misleading statements during his testimony at the first trial. *Id.* at ¶ 7. Finding that the attorney did not give the incomplete responses with the intent to obstruct justice, the federal judge treated the offense as a misdemeanor, sentenced the attorney to two years of probation, and imposed a $2,500 fine. *Id.* at ¶ 8.

**{¶ 37}** We found that Cochran's conduct violated Prof.Cond.R. 3.3(a)(1) (prohibiting an attorney from knowingly making a false statement of fact or law to a tribunal or failing to correct a false statement of material fact or law previously

12

made to the tribunal by the lawyer) and Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness). *Id.* at ¶ 9. Noting the absence of aggravating factors and the presence of several mitigating factors—including a lack of prior discipline, the absence of a dishonest or selfish motive, the submission of numerous letters attesting to Cochran's character and reputation, and his demonstration of "genuine remorse"—we concluded that a stayed one-year suspension was the appropriate sanction for Cochran's misconduct. *Id.* at ¶ 16.

{¶ 38} The facts and circumstances of *Cochran* are arguably more egregious than those in this case. But here, we agree with the board that three aggravating factors and just two mitigating factors are present—as compared to zero aggravating factors and four mitigating factors in *Cochran*, *id*. at ¶ 11. We typically impose an actual suspension from the practice of law for an appropriate period of time when an attorney has engaged in a course of conduct involving dishonesty. *See Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 191, 658 N.E.2d 237 (1995). In this case, however, we believe that a longer-term suspension, all stayed on conditions that include a period of monitored probation and a requirement that Owens complete additional CLE focused on client-trust-account management, will best protect the public from future harm. Therefore, we sustain Owens's third objection in part.

{¶ 39} Accordingly, Robert Morris Owens is suspended from the practice of law in Ohio for one year, all stayed on the conditions that in addition to the CLE requirements of Gov.Bar R. X, he complete a two-hour CLE course focused on client-trust-account management and serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21). If Owens fails to comply with a condition of the stay, the stay will be lifted and he will serve the full one-year suspension. Costs are taxed to Owens.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, FISCHER, DEWINE, and DEGENARO, JJ., concur.

KENNEDY, J., dissents and would suspend respondent for six months, and would require that as a condition of reinstatement that in addition to completing the continuing legal education requirements of Gov.Bar. R. X, respondent must complete an additional two-hour continuing legal education course focused upon client-trust-account management.

FRENCH, J., dissents and would suspend respondent for six months, all stayed on the condition that in addition to completing the continuing legal education requirements of Gov.Bar. R. X, respondent must complete an additional two-hour continuing legal education course focused upon client-trust-account management.

_____

Scott J. Drexel, Disciplinary Counsel, Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Louis H. Herzog, for respondent.

_____